IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MED VETS, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>VIP PETCARE HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02054-MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY; EXTENDING DEADLINE TO FILE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 38 |

Before the Court is the "Motion for Limited Expedited Discovery," filed October 3, 2018, by which plaintiffs Med Vets, Inc., and Bay Medical Solutions, Inc. (collectively, "plaintiffs") seek, pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, discovery of a filing submitted to the United States government by defendants VIP Petcare Holdings, Inc., and PetIQ, Inc. (collectively, "defendants") prior to defendants' merger in January 2018 ("HSR filing").[1] Defendants have filed opposition, to which plaintiffs have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

On April 4, 2018, plaintiffs filed a complaint against defendants, alleging antitrust

---

[1] Pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, parties to mergers covered thereby must submit a premerger notification to the U.S. government. (See 15 U.S.C. § 18a(d)(1) (providing required "notification" must "contain such documentary material and information relevant to a proposed acquisition as is necessary and appropriate to enable the Federal Trade Commission and the Assistant Attorney General to determine whether such acquisition may, if consummated, violate the antitrust laws").)

[2] On November 13, 2018, the Court took the matter under submission.

1    claims under the Clayton Act and Sherman Act.

2    On June 1, 2018, defendants filed a motion to dismiss the complaint. Thereafter,
3    on August 3, 2018, during a hearing on the motion, plaintiffs, in response to some of the
4    Court's comments about the lack of factual support for the allegations in the complaint,
5    informed the Court of the HSR filing. In particular, plaintiffs stated such filing contains
6    "facts regarding the market, . . . market shares, [and] competition" (see Tr. of
7    Proceedings (Aug. 3, 2018) ("Tr.") at 41:10–12), and that they had "requested" the HSR
8    filing from defendants, who had "declined to provide it" (see id. at 15:17–18).

9    At the end of the hearing, the Court granted defendants' motion, finding, inter alia,
10   plaintiffs had not "pled a plausible market" (see id. at 44:20; see also id. at 38:9 (noting
11   complaint "has a lot of overarching statements about the market, but they are not really
12   supported by facts")), and gave plaintiffs leave to amend.[3]

13   Subsequently, plaintiffs filed the instant motion, attaching thereto a proposed First
14   Amended Complaint ("FAC"), after which defendants filed an opposition, to which
15   plaintiffs filed a reply along with a "restated" proposed FAC. See Restated [Proposed]
16   FAC at 1:20. Although given the opportunity, defendants did not file a sur-reply to
17   address the restated proposed FAC.

## LEGAL STANDARD

19   Pursuant to Rule 26, absent various exceptions not applicable here or a court
20   order providing for expedited discovery, "[a] party may not seek discovery from any
21   source before the parties have conferred" in preparation for the initial scheduling

---

[3] Contrary to plaintiffs' contention, the Court did not apply an "elevated pleading standard." (See Reply at 4:22–23.) As the Court noted at the hearing, plaintiffs must plead sufficient facts to render their complaint "plausible." (See, e.g., Tr. at 4:12–13 (explaining need to plead "a legally viable market, a plausible market in the language of the cases")); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face"; noting plaintiffs failed to "nudge[] their claims across the line from conceivable to plausible"); Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1121 (9th Cir. 2018) (holding plaintiffs "failed to plead any plausible product markets" where plaintiffs "merely restate[d] a test for market definition without any factual elaboration").

1 conference. See Fed. R. Civ. P. 26(d)(1). Moreover, ordinarily, where a party's
2 "complaint is deficient under Rule 8, [said party] is not entitled to discovery, cabined or
3 otherwise." See Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009) (declining "to relax the
4 pleading requirements" on the "promise[]" of "minimally intrusive discovery"). The Court
5 acknowledges, however, that the Court retains discretion, under appropriate
6 circumstances, to grant such a party leave to conduct discovery, and, as set forth below,
7 has considered whether plaintiffs have made a showing sufficient to warrant such leave.

In the Ninth Circuit, courts apply a "good cause" standard to requests for expedited discovery. See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (applying "the conventional standard of good cause" in evaluating request for expedited discovery pursuant to Rule 26(d)). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." See id. Expedited discovery "is not the norm," and, consequently, "the moving party must make some prima facie showing of the need" for such discovery. See Citizens for Quality Ed. San Diego v. San Diego Unified Sch. Dist., 2018 WL 1150836, at *2 (S.D. Cal. 2018) (emphasis in original; internal quotation and citation omitted). "In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." See Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012) (noting party seeking expedited discovery "has the burden of showing good cause for the requested departure from usual discovery procedures").

**DISCUSSION**

According to plaintiffs, an entity intending to merge with another is required to identify in an HSR filing its competitors, product markets, and market concentration, which information plaintiffs assert would "allow [them] to submit a more fulsome amended

3

complaint." (See Pls.' Mot. for Ltd. Expedited Disc. ("Mot.") at 17:15–16).) In support of such request, plaintiffs contend they have "consulted numerous . . . sources about the distribution of pet medications" (see id. at 13:3–4), that the product markets at issue "are notoriously opaque and secretive" (see id. at 12:25), and, consequently, that the "factual details the Court requires are not available to plaintiffs" (see id. at 12:7). For the reasons set forth below, the Court is not persuaded.

At the outset, the Court notes that, contrary to the parties' assertions (see Mot. at 6:22; Opp'n at 2:14, 3 n.1), the Court, at the above-referenced hearing, did not make any ruling on the discoverability of the HSR filing. Rather, the Court merely informed plaintiffs that, given the manner in which the matter was raised, the Court was not in a position to issue an order "at the moment." (See Tr. at 45:7.) Accordingly, the Court now turns to the instant motion and plaintiffs' claimed need for the HSR filing.

In a declaration filed in support thereof, plaintiffs attest they "undertook significant efforts" to obtain information by "interviewing witnesses, from both large and small retailers and various distributors and former distributors" (see Decl. of Jonathan L. Rubin (Oct. 3, 2018) ("Rubin Decl.") ¶ 11), and by "purchasing industry reports purporting to contain the relevant data on market participants, organization, distribution channels, and product groups" (see id.).

As to the witnesses, plaintiffs do not identify how many people they interviewed, whom they interviewed, or what any such persons said. Rather, plaintiffs assert, in essentially conclusory fashion and without further elaboration, that "many interview sources gave plaintiffs unreliable or contradictory information [and] appeared to lack candor and honesty or to be well informed." (See id.; see also Mot. at 13:6–7 (asserting "[m]arket participants are either unwilling to discuss the industry or provide plaintiffs with information that is biased or of questionable reliability").)

As to the reports, plaintiffs state they purchased two such publications, titled, respectively, "Pet Medications: United States" and "The US Flea Control and Heartworm Markets," but, as to their content, offer only plaintiffs' conclusion that neither "yielded

4

much relevant market information such as firm market shares[4] or market participants." (See Decl. of Jeffrey Powers (Oct. 3, 2018), ¶ 2; see also Mot. at 13:26 (contending reports "failed to provide sufficiently informative facts relevant to the antitrust analysis of the industry").)[5]

Under such circumstances, the Court finds plaintiffs have not shown "the need for expedited discovery," see Semitool, 208 F.R.D. at 276, and, consequently, have not established good cause therefor, see Rovio, 907 F. Supp. 2d at 1100 (holding plaintiff "failed to demonstrate the requisite good cause to justify expedited discovery" where plaintiff did not show need for information requested).

In so finding, the Court makes no determination as to the adequacy of plaintiffs' proposed FAC, either in its original or "restated" form, a question that will be addressed should defendants choose to respond to plaintiffs' operative pleading by way of a motion to dismiss.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for expedited discovery is hereby DENIED. The deadline by which plaintiffs may file a First Amended Complaint, either with or without modification of the most recently proposed version, is hereby EXTENDED to December 14, 2018.

**IT IS SO ORDERED.**

Dated: November 28, 2018

MAXINE M. CHESNEY
United States District Judge

---

[4] The Court further notes that plaintiffs were not required to plead "firm," as opposed to estimated, market shares; indeed, at the hearing, the Court pointed out that plaintiffs had offered a "best estimate" as to market shares for their alleged prescription pet medication market and asked why plaintiffs could not make a similar estimate for their alleged restricted pet medication market. (See Tr. at 42:1–13.)

[5] Whatever additional efforts plaintiffs may have made to obtain information are described only in general fashion. See Rubin Decl. ¶ 11 (stating plaintiffs "took other measures and expended other efforts to cull from the publicly available information sufficient factual material to define the relevant markets using more traditional metrics").